**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 94-10985
(Summary Calendar)

WILLIAM P. BURROW;
JANIE M. BURROW,

                                        Plaintiffs-Appellants,

versus

SOUTHWESTERN BELL
TELEPHONE COMPANY,

                                        Defendant-Appellee,

AND GYPSUM TRANSPORT, INC.

                                        Defendant.

Appeal from the United States District Court
For the Northern District of Texas
(1:93-CV-162-C)

January 19, 1996

Before WIENER, PARKER, and DENNIS, Circuit Judges:

PER CURIAM:[*]

        Plaintiffs-Appellants William and Janie Burrow challenge the

district court's decision to award judgment as a matter of law to

        [*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Defendant-Appellee Southwestern Bell Telephone Company (Bell). Taking the issue of Bell's negligence from the jury, the district court determined that Bell, on whose property Mr. Burrow was working as an independent contractor at the time of his injury, had not violated any duty owed to Mr. Burrow. We affirm.

I

FACTS AND PROCEEDINGS

Mr. Burrow did business as Burrow Trucking. Pursuant to a written contract (Contract) between Gypsum Transport, Inc. (Gypsum) and Mr. Burrow as an independent contractor, he agreed to provide trucking services to Gypsum. Among other things, the Contract provided that (1) Mr. Burrow had control over and responsibility for the loading and unloading of any property that he transported, and (2) he would hire additional manpower if he could not load the property by himself.[1]

---

[1] The Contract read in pertinent part as follows:

1. The CONTRACTING OWNER [Mr. Burrow], shall determine the means and methods of performance of all transportation services undertaken by the CONTRACTING OWNER under the terms of this Agreement. The CONTRACTING OWNER has and shall retain all responsibility for:

* * * * *

(d) Further, the CONTRACTING OWNER . . . <u>shall be responsible for and bear the expense of loading and unloading the property onto and from the motor vehicle</u>. In the event the CONTRACTING OWNER is unable to perform the services of loading and unloading at the shippers' and consignees' place of business, the CONTRACTING OWNER shall hire the necessary manpower to do so.

* * * * *

(e) Furnish all necessary tie-down equipment and safety equipment . . .

On the date of the accident, Gypsum's dispatcher instructed Mr. Burrow to pick up several empty cable reels from Bell's Amarillo, Texas, location and deliver them to Superior Cable Company in Brownwood, Texas. When he arrived at Bell's plant, Mr. Burrow was directed to a man identified as "Dean." Mr. Burrow gave Dean a bill of lading and Dean told Mr. Burrow that the empty reels were in the open space in the back corner of Bell's facility (Yard). Dean said, "I will go and see if I can find a forklift." The two men parted company: Mr. Burrow went to move his flatbed truck into position near the reels, and Dean went to locate a forklift.

After "some time," Clarence Reese, a truck driver employed by Gypsum, arrived at the Yard with a delivery of telephone cable and reels. Reese told Mr. Burrow that unless he wanted to "wait forever," he ought to load his own trailer. With that gratuitous comment, Reese disappeared but returned shortly driving a forklift owned by Bell. Reese then proceeded to unload his own cargo. After Reese finished unloading his cargo, he was assured by Mr. Burrow that he could handle loading the empty reels alone. Mr. Burrow had prior experience with forklifts and had certified to Gypsum that he could use a forklift. Reese departed, leaving the forklift at that location.

---

after advising the Carrier of the availability of the equipment . . . shall, when requested by the Carrier, haul such commodities as may be provided by the CARRIER, the CONTRACTOR shall utilize only the equipment

Each reel that Mr. Burrow had to load was approximately 6-7 feet in diameter and weighed approximately 500 pounds. Each was sitting upright in the Yard. Before beginning the loading process, Mr. Burrow placed a folded tarpaulin, approximately 12 inches high, across the width of a trailer. He intended for that tarp to brace the reels and prevent then from rolling off the flatbed trailer. He then began the loading process. Maneuvering the forklift up to the first reel, he inserted the machine's arms through the spokes of the reel and lifted it a few feet off the ground. Mr. Burrow then drove the forklift to the driver's side of the flatbed trailer, raised the reel to a height slightly higher than the bed of the trailer, edged the forklift closer to the trailer, and lowered the reel onto the bed of the trailer at the end closest to the cab. Just to be safe, he paused with the forklift arms still in the spokes to ensure that this reel would not roll. When the reel did not immediately begin to roll, Burrow backed out the forklift. But, as soon as the forklift arms had been removed, the reel began to roll slowly toward the rear of the trailer. In response, Mr. Burrow moved the forklift forward in an attempt to use the arms to stop the reel from rolling. His efforts proved unsuccessful, however, and the reel continued its slow but steady roll to the rear end of the trailer.

Mr. Burrow assumed that the reel would eventually roll off the trailer, but thatSQgiven its slow paceSQthe reel would fall harmlessly to the ground. He thus gave up trying to stop the reel and got off the forklift to search for more promising bracing

4

material.  As he searched, he wandered to the rear end of his trailer.  His attention was suddenly drawn by a movement that he saw peripherally from the corner of his eye.  Mr. Burrow turned just in time to see the 500 pound reel roll off the trailer and on top of him, producing injuries to his head, shoulder, and ankle.

Almost a year later, the Burrows filed this suit against Bell in the 32nd Judicial District Court of Nolan County, Texas, seeking damages for the personal injuries sustained by Mr. Burrow.  Bell removed the suit to federal district court.  In its answer, Bell asserted that, as Mr. Burrows was an independent contractor, if anyone other than he were liable it would have to be Gypsum and not Bell.  The Burrows then filed an amended complaint, joining Gypsum.

A jury trial ensued.  At the close of evidence, but before the jury was charged, Bell moved for a judgment as a matter of law, arguing that the Burrows had failed to establish that Bell violated any duty owed to Mr. Burrow.  The district court granted that motion, after which the jury found both of the remaining parties negligent, apportioning 35% fault to Mr. Burrow and 65% fault to Gypsum.[2]  Burrows timely appealed the district court's award of judgment as a matter of law in favor of Bell.

---

[2] Mr. Burrow owned the truck.  Gypsum provided the trailer for Mr. Burrow to haul.  The jury found Gypsum negligent in providing Mr. Burrow with a flatbed trailer without any type of perimeter railing for hauling the reels.

5

II

DISCUSSION

A.    STANDARD OF REVIEW

We review a judgment as a matter of law de novo, applying the same standard applied by the district court.  Here, we view the evidence in the light most favorable to the Burrows, the non-moving party.[3]

B.    JUDGMENT AS A MATTER OF LAW

None dispute that Burrow was an independent contractor, responsible for loading the reels onto his trailer.  In Texas, the general rule is that the owner or occupant of a premises does not have a duty to see that an independent contractor performs work in a safe manner.[4]  "Where the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity . . . the responsibility or duty is that of the independent contractor, and not that of the owner of the premises."[5]  When the property owner exercises some control over an independent contractor's work, however, the owner may be liable unless he exercises reasonable care in supervising the independent

---

[3] E.g. Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969).

[4] Thomas v. Internoth, Inc., 790 F.2d 1253, 1255 (5th Cir. 1986); see also Redinger v. Living, Inc., 689 S.W.2d 415, 418 (Tex. 1985); Abalos v. Oil Development Co., 544 S.W.2d 627 (Tex. 1976).

[5] Abalos, 544 S.W.2d at 631 (citing Shell Chemical Company v. Lamb, 493 S.W.2d 742 (Tex. 1973)).

6

contractor's activity.[6]  Thus, we must answer two questions: First, did Bell control or supervise Mr. Burrow?  Second, did Mr. Burrow's injuries result from a dangerous condition created by Bell?  As shall be seen, we answer both question in the negative.

1.  <u>Supervision and Control</u>

Burrow contends that because a Bell employee told him where to find the reels and because Bell owned the forklift, Bell supervised his activities.  We disagree.  The property owner's role must be more than a general right to order the work to start or stop, to inspect progress, or to receive reports.[7]  The property owner will be liable only when he retains some control over the <u>manner</u> in which the independent contractor's work is performed.[8]  Directing an independent contractor to the particular location where his work is to be performed is insufficient to establish a property owner's control or supervision over the <u>manner</u> in which an independent contractor's work is performed.  Here, all decisions regarding the loading of the reel were made by Mr. Burrow.  We hold that Mr. Burrow's conversation with Dean concerning nothing more than the physical location of the reels was insufficient to constitute supervision.

---

[6] <u>Redsinger</u>, 689 S.W.2d at 418. ("We adopt the rule enunciated in the Restatement (Second) of Torts: One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.").

[7] <u>Id.</u>

[8] <u>Id.</u>

2.    <u>Dangerous Condition</u>

Burrow also contends that the forklift itself constituted a dangerous condition about which Bell failed to warn him.  We find this argument unpersuasive.  A parked forklift is not a dangerous condition per se, and it does not become one simply by being properly driven or operated in a work area.  We fail to see how the subject forklift, in and of itself, could constitute a dangerous condition on Bell's property.  On the contrary, the danger only arose when Mr. Burrow used the forklift himself and proceeded to load a 500 pound reel on his flatbed trailer in a manner that would allow it to roll rather than stand upright, then watched as the reel overcame the meager restraintSQthe tarpaulinSQand started rolling slowly down his trailer.  Moreover, with the reel thus in motion, instead of remaining in the forklift--arguably the safest location in the immediate vicinity, standing as it did perpendicular to the path of the reel--Mr. Burrow jumped out of the forklift, took his eyes and attention off the rolling 500 pound reel, and wandered into its path.  We hold that Mr. Burrow failed to produce evidence from which a reasonable juror could conclude that the forklift was a dangerous condition.

For the foregoing reasons, the judgment of the district court, awarding Bell a judgment as a matter of law, is
AFFIRMED.